UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| UNITED STATES OF AMERICA, | Case No. 2:16-cr-00046-GMN-PAL |
|---|---|
| Plaintiff, | **REPORT OF FINDINGS AND RECOMMENDATION** |
| v. | |
| RYAN W. PAYNE, | (Mot. Dismiss – ECF No. 291) |
| | (Mot. File Corr Resp – ECF No. 414) |
| Defendant. | |

Before the court is Defendant Ryan Payne's ("Payne") Motion to Dismiss (ECF No. 291) which was referred for a Report of Findings of Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB1-4 of the Local Rules of Practice. The court has considered the Motion (ECF No. 291), the government's Response in Opposition (ECF No. 383), the Joinders of Defendants Ammon Bundy and Peter Santilli (ECF Nos. 300, 305), the government's Motion to File Corrected Response (ECF No. 414), and Payne's Reply (ECF No. 418).

## **BACKGROUND**

### I.  **Procedural History**

Payne is charged in a Superseding Criminal Indictment (ECF No. 27) returned March 2, 2016, with 16 felony counts arising out of events that occurred in and around Bunkerville, Nevada, on April 12, 2014. The government alleges that Payne and his co-Defendants planned, organized, led, and participated as gunmen in an assault on federal law enforcement officers in an effort to threaten, intimidate, and extort the officers into abandoning approximately 400 head of cattle that were in their lawful care and custody. One of the goals of the alleged conspiracy was to thwart the seizure and removal of Defendant Cliven Bundy's cattle from federal public lands. Since 1998, Cliven Bundy was under a federal court order to move is trespassed cattle.

1

The superseding indictment relates the history of Cliven Bundy's disputes with the federal government concerning grazing his cattle on land managed by the Bureau of Land Management and the court orders which authorized removal of the cattle. A removal or "impoundment" operation began on April 5, 2014. Payne is charged with conspiracy to commit an offense against the United States in violation of 18 U.S.C. § 371; conspiracy to impede and injure a federal officer in violation of 18 U.S.C. § 372; assault on a federal officer in violation of 18 U.S.C. § 111(a)(1) and (b); threatening a federal law enforcement officer in violation 18 U.S.C. § 115(a)(1)(B); use and carry of a firearm in relation to a crime of violence in violation of 18 U.S.C. § 924(c); obstruction of the due administration of justice in violation of 18 U.S.C. § 1503; interference with interstate commerce by extortion in violation of 18 U.S.C. § 1951; interstate travel in aid of extortion in violation of 18 U.S.C. § 1952; and aiding and abetting in violation of 18 U.S.C. § 2.

Payne is one of seven Defendants who are also charged in a case pending in the District of Oregon. Both this case, and the case pending in the District of Oregon, have been declared complex. Payne has been detained pending trial in both cases as a flight risk and as a danger to the community. Trial in the District of Oregon is currently set for September 7, 2016. A complex case schedule has been entered in this case which has been set for trial on February 6, 2017.

## II. The Parties' Positions

### A. Payne's Motion to Dismiss

In the current motion Payne seeks an order dismissing this case with prejudice asserting that the government's decision to simultaneously prosecute him in two separate federal district courts violates his Sixth Amendment rights to a speedy trial and to effective assistance of counsel, as well as his Fifth Amendment rights to due process. Payne's Oregon counsel also filed a motion to dismiss the Oregon prosecution on similar grounds.

When the superseding indictment was returned, the government applied for a writ of habeas corpus ad prosequendum to transport Payne and other Defendants in custody in Oregon to the District of Nevada for an initial appearance, and arraignment and plea. Payne and his co-

Defendants objected to their transportation and simultaneous prosecution. Payne and six other co-Defendants also charged in the District of Oregon case challenged the legality of the writs of habeas corpus ad prosequendum, and objected to transportation to Nevada for initial appearance, and arraignment and plea. The district judge in Oregon, the Honorable Anna J. Brown, conducted a hearing, inviting this court to participate by videoconference with government counsel and defense counsel who had been assigned to Payne and other co-Defendants in this district. After hearing arguments from counsel in both districts, Judge Brown entered a written order requiring the seven Defendants in custody in Oregon also charged in this case to be transported to the District of Nevada, and returned between April 11, 2016, and April 25, 2016. Payne made his initial appearance in this district on April 15, 2016.

On March 30, 2016, Payne's Oregon counsel filed an interlocutory appeal to the Ninth Circuit challenging the legality of the writ of habeas corpus ad prosequendum issued in this court. He asked that the writ be stayed pending the interlocutory appeal to the Ninth Circuit. His requests for stay of Judge Brown's order were denied by Judge Brown and the Ninth Circuit. In his interlocutory appeal, Payne challenged his simultaneous prosecution in both districts. He asked the Ninth Circuit to decide whether the non-consensual transfer from Oregon to Nevada before the Oregon case was resolved infringed on due process-based rules for priority of warrants, his rights under the Speedy Trial Act, and Sixth Amendment right to counsel.

This motion to dismiss was filed after Payne was returned to the District of Nevada and made an appearance and plea in this case, but before the Ninth Circuit decided the appeal of Judge Brown's order. Payne has now made his appearance, entered a plea of not guilty, and has been returned to Oregon awaiting trial in both cases. The motion to dismiss argues that the government's decision to simultaneously prosecute him on criminal charges in two separate federal districts forces him to choose between guaranteed constitutional rights. Specifically, it forces him to elect between exercising his constitutional rights under the Fifth and Sixth Amendments in the Oregon case or in the Nevada case. In his motion, Payne states he invokes his constitutional rights to a speedy trial, effective assistance of counsel, and due process. He has not waived, and in fact, has invoked these rights both here and in the District of Oregon case.

3

Government counsel has indicated that the Oregon case will be tried first. However, requiring Payne to defend both cases simultaneously violates his constitutional trial rights. By choosing to proceed to trial in the Oregon case first, the government is forcing Payne to waive his constitutional rights in this case. Citing *United States v. Simmons*, 390 U.S. 377 (1969), and *United States v. Jackson*, 390 U.S. 570 (1968), Payne argues the government cannot force him to choose which case should receive the benefit of his guaranteed constitutional rights. He contends his Sixth Amendment right to a speedy trial will be violated if he is forced to litigate both in Oregon and Nevada simultaneously. No one can predict with precision at this point how long it will take to actually bring the Oregon case to trial. Payne asserts there is good reason to believe the trial in Oregon will not be completed by September 2016. He cites statistics published by the United States Courts that indicate the median time between filing a criminal case is 16.8 months, and the median time for complex cases is 23.6 months.

Payne maintains that he is placed in the intolerable position of either proceeding to a speedy trial in the District of Oregon or in the District of Nevada. He cannot do both. Additionally, the emotional stress and uncertainty of the litigation the government has pursued simultaneously in both cases "is double that faced by the typical defendant." Dismissal of this case with prejudice is the only remedy available to cure the government-caused violation of his constitutional speedy trial rights.

Payne also argues that his Sixth Amendment right to effective assistance of counsel will be violated if he is forced to litigate both in Oregon and Nevada simultaneously. The most critical period of litigation is between arraignment and the beginning of trial. The only way Payne will be able to review discovery in this case is for his counsel to bring a laptop during visitation sessions in Oregon. This will require counsel to fly to Portland and review discovery in person. Counsel argue that they cannot hope to effectively represent Payne if he only has access to the electronic case materials during scheduled in-person visits with counsel. Additionally, defending both cases simultaneously will require Payne to apportion time between two sets of discovery, two separate lines of defense preparation, two different defense teams, and two different sets of court proceedings.

Payne also asserts that his Fifth Amendment due process rights will be violated if he is forced to defend both cases simultaneously. The government's unilateral decision to try the Oregon case first will force Payne to delay trial and trial preparation in this case in which the factual underpinnings are alleged to have begun in 2014, two years before the 2016 allegations involved in the Oregon prosecution. Witnesses' memories will fade with time, witnesses who may be available to assist Payne's defense in Nevada may not be available to him while he waits for the government to litigate the conclusion of the Oregon case. The conditions and layout of the land where much of the conduct is alleged to have occurred will also change with time due to natural causes, weather patterns, and public use and access. For all of these reasons, Payne argues that dismissal with prejudice is the only appropriate remedy to preserve his constitutional rights.

If the court is not inclined to dismiss the case with prejudice, Payne asks, in the alternative, that the court: (1) not return him to the District of Oregon; (2) order Payne detained in the District of Nevada so defense counsel may properly advise him; and (3) order the government to immediately disclose all discovery. Although Payne will still be prejudiced if the court grants all three forms of relief, the prejudice is the result of the government's conduct. Nevada counsel for Payne asks for this relief because they have an obligation to provide effective assistance of counsel in this case. For this reason, they cannot acquiesce to Payne's transfer back to Oregon.

### B. The Government's Response

The government opposes the motion acknowledging that the Sixth Amendment right to a speedy trial attaches at the time a case is indicted. However, citing *Barker v. Wingo*, 407 U.S. 514, 527 (1972), the government argues that a defendant's right to a speedy trial under the Sixth Amendment is a "more vague concept than other procedural rights," which "does not make it possible to pinpoint a precise time in the process when the right must be asserted or waived." Courts presume prejudice after a delay of more than one year from the indictment. However, courts traditionally review claims of speedy trial violations within the context of the Speedy Trial Act, 18 U.S.C. §§ 3161–74. The Speedy Trial Act affords greater protection to a defendant's

right to a speedy trial than the Sixth Amendment guarantees, and the Ninth Circuit has held that "it will be an unusual case in which the time limits of the Speedy Trial Act have been met, but the Sixth Amendment right to a speedy trial has been violated."

In this case, Payne has been joined for trial with the trial of 18 co-Defendants. Payne Sixth Amendment right to a speedy trial was triggered on February 17, 2016, when the initial indictment was returned. The court has entered a case management order and declared this as a complex case. Nineteen Defendants have been jointly charged in an alleged conspiracy to commit serious crimes of violence against federal law enforcement officers in Nevada. Payne's trial date is set for February 6, 2017, less than one year from the initial Nevada indictment. Therefore, the court need not balance the *Barker v. Wingo* factors where, as here, the trial date is set within the one-year presumptive limit. Additionally, any delay contemplated by the court's case management order has been addressed and specifically excluded under the Speedy Trial Act. The court conducted a two-hour hearing to determine whether the nature of the case was complex and to ascertain all of the Defendants' proposed trial dates. None of the Defendants, including Payne, sought trial on the original setting of May 2, 2016. The trial date that was selected was suggested by the government, and originally agreed to by twelve co-Defendants who stipulated to it. The court's case management order set clear milestones for the government's production of discovery and filing motions, including motions for severance.

Additionally, the government argues that any delay in the Nevada case that is attributed to Payne's trial and charges in Oregon is specifically addressed by § 3161(h)(1)(B), which allows for excludable time due to "delay resulting from trial with respect to other charges against the defendant." The Speedy Trial Act recognizes that criminal cases vary widely and that there are valid reasons for greater delay in particular cases.

The government disputes that Payne's simultaneous prosecution in Oregon and Nevada confront him with a "*Hobson*'s choice" of waiving his Sixth Amendment right to a speedy trial or waiving his right to effective assistance of counsel. This argument is speculative. Payne has failed to show how his joinder in the Nevada case causes his counsel's representation to fall under constitutional requirements. To the extent that Nevada counsel need more time to prepare

for the February 2017 trial, the remedy is to request a continuance, not to dismiss the superseding indictment. A continuance which complies with the Speedy Trial Act does not violate Payne's Sixth Amendment right to a speedy trial and Payne is therefore not forced to give up or waive his Sixth Amendment guarantees when seeking a continuance.

If Payne wants to go to trial in Nevada before his September 2016 trial in Oregon, he can always attempt to show cause why he should be severed from the Oregon case and transported to Nevada to stand trial on a day of his choosing. He has not done so. Ultimately, it is the two courts, not the government that will set the trial date in both cases consistent with the right to a speedy trial and the needs of counsel to adequately prepare.

The government also argues that courts have repeatedly rejected arguments that a defendant is deprived of assistance of counsel because his counsel cannot have constant in-person contact with him. Payne's due process arguments are equally unfounded. In *Barker v. Wingo*, the Supreme Court held that a five-year delay in bringing a defendant to trial did not violate his Sixth Amendment right to a speedy trial. Finally, the government argues that Payne cannot establish prejudice by his joinder as a co-Defendant in Nevada. He has already been detained pending trial in the Oregon case and will spend no more time in pretrial detention as a result in being joined in this Nevada case than he would if the government had waited to join him until the Oregon trial concluded. Instead, he will have the advantage of lawyers in both district and discovery in both districts. The government suggests that rather than prejudicing Payne, moving forward with discovery in both cases presents rather obvious possible benefits including the possibility of joint resolution, avoiding inconsistent representations, and collaboration between both sets of attorneys. The court should therefore deny the motion.

The government filed a corrected response indicating it had improperly cited an unpublished Ninth Circuit case in violation of Ninth Circuit Rule 36-3. The government therefore filed a corrected response in opposition to delete reference to that case.

### C. Payne's Reply

Payne's reply reiterates arguments that the government's decision to simultaneously prosecute him here and in Oregon impermissibly forces him to choose between guaranteed

7

constitutional trial rights, deprives him of the Sixth Amendment right to a speedy trial, and deprives him of effective assistance of counsel. Mr. Payne will not have meaningful access to counsel while detained in Oregon. The harsh reality is that he must simultaneously prepare for trial in both Oregon and Nevada at the same time, apportioning his time between both cases and both sets of counsel. The government's suggestion that he is somehow benefitting by simultaneous prosecution distorts the realities of defense trial preparation and ignores that Payne's attention is now divided between two criminal cases, each of which poses substantial risk to his liberty. The government's suggestion that Mr. Payne can also show why he should be severed from the Oregon case and transported to Nevada to stand trial on a date of his choosing ignores the apparent jurisdictional limits of the courts. Judge Navarro denied his motion to stay transport to Oregon pending adjudication for failing to provide the legal basis for her jurisdiction and why the motion should not be heard by the Oregon district judge. Thus, a meaningful proceeding in this case is not feasible, and his due process rights will be violated if he is forced to litigate both the Oregon and Nevada cases simultaneously.

## **DISCUSSION**

### **I.    Rule 12(b)**

Pursuant to Rule 12(b) of the Federal Rules of Criminal Procedure, "Any defense, objection, or request which is capable of determination without the trial of the general issue may be raised before trial by motion." A motion to dismiss is generally capable of determination before trial "if it involves questions of law rather than fact." *See United States v. Yip*, 248 F. Supp. 2d 970, 972 (D. Haw. 2003) (citing *United States v. Shortt Accountancy Corp.*, 785 F.2d 1448, 1452 (9th Cir. 1986))). Generally, the court should not consider evidence appearing outside the four corners of the indictment and "must accept the facts alleged in that indictment as true." *United States v. Ruiz-Castro*, 125 F. Supp. 2d 411, 413 (D. Haw. 2000) (citing *Winslow v. United States*, 216 F.2d 912, 913 (9th Cir. 1954)). The indictment itself should be (1) read as a whole; (2) read to include facts that are necessarily implied; and (3) construed according to common sense. *United States v. Blinder*, 10 F.3d 1468, 1471 (9th Cir. 1993) (citing *United*

*States v. Buckley*, 689 F.2d 893, 899 (9th Cir. 1982)). The court's inquiry must end there. Arguments directed at the merits of the claims must be left for trial.

The Ninth Circuit has instructed that Rule 12(b) motions are usually appropriate to consider legal issues such as double jeopardy, previous conviction or acquittal, statute of limitations, immunity, and jurisdiction. *See United States v. Smith*, 866 F.2d 1092, 1096 n.3 (9th Cir. 1989). However, where the legal issues are "intermeshed with questions going to the merits," they should be determined at trial. *See United States v. Nukida*, 8 F.3d at 670 (9th Cir. 1993) (citing *United States v. Ayarza-Garcia*, 819 F.2d 1043, 1048 (11th Cir. 1987)).

**II.    Federal Rule of Criminal Procedure 48(b)**

Rule 48(b) authorizes a court to dismiss an indictment "if unnecessary delay occurs in: (1) presenting a charge to a grand jury; (2) filing an information against a defendant; or (3) bringing a defendant to trial." The Supreme Court has held that Rule 48(b) is limited to post-arrest situations. *United States v. Marion*, 404 U.S. 307, 319 (1971). The Ninth Circuit has held that, although Rule 48(b) gives the district court discretion, a Rule 48(b) motion to dismiss should only be granted in "extreme circumstances." *United States v. Huntley*, 976 F.2d 1287, 1291 (9th Cir. 1992) (quotations and citations omitted). This is especially true when a dismissal with prejudice is sought. *United States v. Jiang*, 214 F.3d 1099, 1101 (9th Cir. 2000). A district court abuses its discretion if it enters an order of dismissal under Rule 48(b) without satisfying the requirements of "caution" and "forewarning." *United States v. Sears Roebuck & Co.*, *Inc.*, 877 F.2d 734, 737–38 (9th Cir. 1989). The term "caution" is used "in a non-obvious technical sense" and "requires findings of prosecutorial misconduct and actual prejudice to the accused." *Jiang* 214 F.3d at 1101 (internal quotations and citations omitted).

**III.   Post-Indictment Delay**

The Sixth Amendment guarantees the accused the right to a speedy trial. The Sixth Amendment right to a speedy trial is a fundamental right that serves to: (1) "prevent undue oppressive incarceration prior to trial"; (2) "minimize anxiety and concern accompanying public accusation"; and (3) "limit the possibilities that long delay will impair the ability of the accused to [present a defense]." *United States v. Ewell*, 383 U.S. 116, 120 (1966). The Supreme Court

has established a four-factor test to determine challenges to a defendant's Sixth Amendment speedy trial rights: (1) whether the delay was uncommonly long; (2) whether the government or the defendant was responsible for the delay; (3) whether the defendant has asserted his or her right to a speedy trial; and (4) whether the Defendant suffered prejudice. *Doggett v. United States*, 505 U.S. 647, 651 (1992). This four-factor test was first announced in *Barker v. Wingo*, 407 U.S. 514 (1972), which found that none of the four factors is "either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial." *Id.* at 530–33. There, the Supreme Court found a five-year delay in bringing a case to trial did not violate a defendant's speedy trial right.

The Ninth Circuit considers a delay in excess of one year as "presumptively prejudicial." *United States v. Murillo*, 288 F.3d 1126, 1132–33 (9th Cir. 2002). The complexity of the case and nature of the charges are factors the court considers in determining whether delay in particular cases violates a defendant's Speedy Trial Act. *See*, *e.g.*, *United States v. Saenz*, 623 F.3d 461, 464 (7th Cir. 2010) (finding no speedy trial violation because the case was complex and involved a conspiracy case with 19 co-defendants); *United States v. Brown*, 498 F.3d 523, 531 (6th Cir. 2007) (finding no speedy trial violation because complex case involved multiple crimes, defendants, and events occurring in multiple states); *United States v. King*, 483 F.3d 969, 976 (9th Cir. 2007) (finding no speedy trial violation because the case involved a complex conspiracy, multiple defendants, and defendant substituted new counsel halfway through it); *United States v. Register*, 182 F.3d 820, 827 (11th Cir. 1999) (finding no speedy trial violation because of the complex nature of the case involving multiple defendant).

**IV.    Analysis**

The Ninth Circuit heard oral argument on Payne's appeal of Judge Brown's decision ordering his transportation to the District of Nevada on June 18, 2016. In a memorandum of decision issued June 22, 2016, the Ninth Circuit dismissed the interlocutory appeal of Judge Brown's order that Payne and the co-Defendants charged in this district be transported to the district of Nevada pursuant to this court's writ of habeas corpus ad prosequendum for arraignment on separate charges in this district. The interlocutory appeal also challenged the

government's decision to simultaneously prosecute Payne and 6 co-Defendants charged in both districts on due process, speedy trial, and Sixth Amendment right to counsel grounds. The memorandum opinion found that even if Payne and his co-Defendants could establish the first two prongs under the collateral order doctrine, he had not established the third prong. Specifically, the Ninth Circuit found that "whether Defendants have suffered any prejudice as a result of dual prosecutions can be reviewed on direct appeal from a conviction." The decision also cited *United States v. Mehrmanesh*, 652 F.2d 766, 777 (9th Cir. 1991), which held that an order denying a motion to dismiss for violation of the Speedy Trial Act was not immediately appealable because those rights could be vindicated by appeal after trial or in egregious circumstances by mandamus before trial. The Ninth Circuit also declined to grant Payne and his Oregon co-Defendants' alternative request for mandamus relief finding the Defendants had not established "exceptional circumstances amounting to judicial usurpation of power." The appeal was therefore dismissed and the petition denied.

The trial in this case has been declared complex for the reasons explained in the court's Complex Case Scheduling Order (ECF No. 321). A trial date has been set within a year of the initial indictment. The court's case management order declaring the case complex made specific findings that the time between Defendants' arraignment and pleas until the February 6, 2017 trial date was excludable under the Speedy Trial Act. No Defendant filed objections asking the district judge to review these findings, the complex case designation, or the trial date. The Ninth Circuit has declined to address Payne's due process, speedy trial and Sixth Amendment arguments. Payne has not shown that he has been denied due process or access to counsel.

For the reasons explained,

**IT IS RECOMMENDED** that Payne's Motion to Dismiss (ECF No. 291) be **DENIED**.

**IT IS ORDERED** that the government's Motion to File Corrected Response (ECF No. 414) is **GRANTED**.

DATED this 8th day of July, 2016.

PEGGY A. LEEN
UNITED STATES MAGISTRATE JUDGE

11