RENE L. VALLADARES
Federal Public Defender
Nevada State Bar No. 11479
BRENDA WEKSLER
Assistant Federal Public Defender
Nevada State Bar No. 8124
RYAN NORWOOD
Assistant Federal Public Defender
411 E. Bonneville, Ste. 250
Las Vegas, Nevada 89101
(702) 388-6577/Phone
(702) 388-6261/Fax
Brenda_Weksler@fd.org

Attorney for Ryan W. Payne

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>  v.<br><br>RYAN W. PAYNE,<br><br>  Defendant. | Case No. 2:16-cr-046-GMN-PAL<br><br>**MOTION TO CONTINUE TRIAL** |

**Certification**: This Motion is timely filed.

NOW COMES the defendant, Ryan Payne, by and through his counsel of record, Brenda Weksler and Ryan Norwood, Assistant Federal Public Defenders, and respectfully files this Motion to Continue Trial. This pleading is based on the Points and Authorities attached hereto.

/ / /

/ / /

/ / /

DATED this 2nd day of October, 2017.

                                                RENE L. VALLADARES
                                                Federal Public Defender

                                  By:  */s/ Brenda Weksler*
                                                BRENDA WEKSLER
                                                Assistant Federal Public Defender

                                  By:  */s/ Ryan Norwood*
                                                RYAN NORWOOD
                                                Assistant Federal Public Defender

## MEMORANDUM OF POINTS AND AUTHORITIES

Last night, the worst mass shooting in the history of the United States happened in Las Vegas. In this unimaginable tragedy, a gunman with multiple rifles murdered at least 58 persons, and injured at least 500 persons who were attending an outdoor music festival.[1]

Las Vegas is in mourning. People are shocked and outraged at this act of senseless violence in their community. The President is coming on Wednesday. The tragedy has affected the daily lives of every resident in this city. Thousands of people have lost friends and loved ones. Many people are preoccupied with assisting their neighbors. Many people will be attending funerals over the coming three-day weekend. Payne's trial is scheduled to start the next day.

This is not the time to pick a jury and commence a trial in this case. To be sure, Payne and the other defendants in this case have nothing to do with this act of mass murder. The shooter's actual motivation and beliefs remain unclear at this point. However, it is clear that this unprecedented act of violence will prevent the defendants from having a fair trial in this city one week from now.

The shooter is a white male reported to be from Mesquite, Nevada – only a few miles away from the Bundy ranch and the site of the April 12, 2014 events in the wash by Highway I-15. Regardless of the facts, when and if they all come to light, many people have and will associate him with Cliven Bundy and his supporters, who have been previously described as "domestic terrorists" by Nevada Senator Harry Reid and others.

The shooting has immediately led to a discussion about guns, with much negative attention focused on a perceived laxity of gun laws and on persons who choose to bear and

---

[1] https://www.reviewjournal.com/local/the-strip/it-was-a-horror-show-mass-shooting-leaves-at-least-58-dead-515-wounded-on-las-vegas-strip/

3

carry high-powered firearms, as is legal in Nevada.[2]  The gunman in this case is reported to have had 10 rifles in his hotel room.  As the Court is aware, the defendants in this case believe passionately believe in the right to bear arms, and some of them were carrying rifles during the events of April 12, 2014.  Although no shots were fired and the matter was resolved without violence, the government has and will continue to contend that the defendants' bearing of firearms demonstrates their criminal intent, and that the defendants were responsible for unlawfully causing a situation where dozens of people could have been killed.   Jurors will associate this alleged behavior with the unprecedented mass shooting that just happened in their community where dozens of people were murdered, and will not be able to fairly assess the arguments and defenses presented at trial.

   A jury will also be unable to fairly assess the credibility of the government's witnesses.  First responders have been (justifiably) praised for their response to the shooting.[3]  Federal agencies, including the FBI, have also been involved in investigating the matter and helping the victims. Sheriff Joe Lombardo has been prominently featured in the news in the wake of the shooting.  Sheriff Lombardo was present near the wash on April 12, 2014, has been an important witness in the two prior trials, and will likely testify for the government in this trial, along with other officers under his command.

---

[2] Here is a sample of what has already appeared as of this writing, less than 24 hours after the shooting. http://www.newsweek.com/las-vegas-gun-laws-open-carry-concealed-weapon-machine-guns-all-legal-nevada-675310 ("Nevada has some of the most relaxed gun laws in the country, a legislative condition that is sure to come under renewed scrutiny in the wake of the worst mass shooting in U.S. history."); http://www.baltimoresun.com/news/opinion/editorial/bs-ed-1003-las-vegas-shooting-20171002-story.html ("With Sunday night's shooting in Las Vegas, which so far has left 58 dead and more than 500 wounded, is there any hope that the country's leaders will come to their senses and at least seriously consider the wisdom of such a lax approach to weapons of mass destruction?");   http://www.latimes.com/business/hiltzik/la-fi-hiltzik-las-vegas-shooting-20171002-story.html ("Nevada is virtually a laboratory for what can happen when gun laws are loosened, not tightened.")

[3] https://www.cortezmasto.senate.gov/news/press-releases/cortez-masto-statement-on-route-91-harvest-festival-attack

As Payne has expressed in prior pleadings, there were already serious concerns about the ability of the defendants in this case to receive a fair trial because of publicity surrounding this case. *See* e.g, ECF 750 (requesting a change of venue), ECF 2568, pp. 3-5 (explaining that the verdicts in the prior trials happened in spite of, and not because of, the jury's attitudes towards Cliven Bundy, his supporters, and their beliefs). In this controversial case, Payne accepts that it will be impossible to eliminate *any* risk of unfair prejudice. However, the horror of this recent shooting is too recent, and the impact of this incident on the community is too severe, for a fair trial to commence *next week*. The jury questionnaires – which in prior trials have been the main instrument for identifying potential bias amongst the jury pool -- have already been sent out and returned. Regardless of how extensive the Court's voir dire process is, it cannot under these unprecedented circumstances result in an unbiased jury. Indeed, an inquiry into the bias issues will cause likely potential jurors, who will still be outraged by the shooting, to make comments that will further taint the jury pool.

When reviewing a district court's order on a motion for continuance, the Ninth Circuit looks at four factors: "1) [the defendant's] diligence in preparing his defense prior to the trial date; 2) whether the continuance would have satisfied his needs; 3) the inconvenience a continuance would have caused the court and the government; and 4) "the extent to which [the defendant] might have suffered harm as a result of the district court's denial." *United States v. Zamora-Hernandez*, 222 F.3d 1046, 1049 (9th Cir. 2000) (internal quotation marks omitted). "None of the first three factors is ordinarily dispositive." *United States v. Rivera-Guerrero*, 426 F.3d 1130, 1139 (9th Cir. 2005). The Ninth Circuit "ha[s] consistently found that a district court has abused its discretion when the denial of a continuance . . . has compromised [a defendant's] right to a fair trial." *Zamora-Hernandez*, 222 F.3d at 1054. In weighing the four factors listed above, therefore, the Ninth Circuit "pay[s] particular attention to whether the defendant's right to . . . a fair proceeding ha[s] been violated." *United States v. Donaghe*, 924 F.2d 940, 943 (9th Cir. 1991).

These four factors weigh strongly in favor of continuance in this case.

First, Mr. Payne's counsel have been diligent in preparing his defense. They have reviewed thousands of pages of discovery, conducted a thorough independent investigation, filed numerous pretrial motions, and appeared at multiple court appearances. The basis for Mr. Payne's continuance request is events entirely outside his control or that of his lawyers. In addition, Mr. Payne has not previously requested a continuance—evidence that the current request is made in good faith. *Cf. United States v. Thompson*, 587 F.3d 1165, 1174-75 (9th Cir. 2009) (finding no error in denying continuance where, among other things, court had already granted "numerous continuances," defendant's conduct "was clearly 'dilatory,'" and defendant demonstrated "lack of good faith" in requesting additional continuance).

Second, as explained above, a continuance would "satisf[y] [Mr. Payne's] needs" by allowing for the passage of time to cool prospective jurors' tempers. Only distance, and the opportunity for personal and community healing, can achieve this goal. No amount of voir dire questioning—and no jury instructions, however well crafted—break the link in jurors' minds between the events of last night and the images of men with rifles that the government will present to the jury.

Third, although continuing trial will involve some degree of "inconvenience" to witnesses who have already been subpoenaed to appear, this is true of every case in which a party requests a continuance. This case is unlike those in which the Ninth Circuit has affirmed denial of a continuance because "[a witness] had suffered a stroke and . . . her attorney indicated that she would not be able to medically tolerate additional travel to appear at trial at a later date." *United States v. Walter-Eze*, 869 F.3d 891, 908 (9th Cir. 2017). Many government witnesses have already endured inconvenience because of (1) the severing of the defendants into multiple trials, and (2) the government's decision to retry defendants from the Group 1 trial after failing to secure convictions in the first trial. It would be unfair to refuse to impose

additional inconvenience on witnesses in the one situation where that inconvenience benefits the defendants.

Fourth, the prejudice from proceeding to trial next week would be severe. As explained above, this case involves allegations from the government that some defendants—while prone out on high ground above their alleged victims—aimed rifles at government agents, and that other defendants such as Payne aided and abetted them. The images the government will show at trial will resemble the print and television images jurors will have seen on endless repeat while following last night's events. It is unrealistic to expect the similarity of these two scenarios will not prejudice the defendants. Moreover, prejudice is particularly likely because the government lacks "overwhelming evidence of guilt," which the Ninth Circuit has indicated can mitigate prejudice to some degree. *United States v. Chandler*, 316 F. App'x 676, 678 (9th Cir. 2009) (unpublished). Indeed, juries in the first two trials were so unmoved by the government's evidence that, with a few exceptions, they either acquitted all defendants or could not reach a verdict.

* * * *

The defendants in this case remain in custody and very much want and deserve a speedy trial. However, as Payne's counsel noted during the last hearing, the need for a speedy trial must be balanced with their right to a fair trial and impartial jury. That's not possible right now. "[W]here there is a reasonable likelihood that prejudicial news prior to trial will prevent a fair trial, the judge should continue the case until the threat abates, or transfer it to another county not so permeated with publicity." *Sheppard v. Maxwell*, 384 U.S. 333, 363 (1966); *see also Zamora-Hernandez*, 222 F.3d at 1054 (explaining Ninth Circuit "ha[s] consistently found that a district court has abused its discretion when the denial of a continuance . . . has compromised [a defendant's] right to a fair trial").

At this juncture, Payne does not ask the Court to make any ruling about a change of venue. In time, the community's justified shock and outrage about this tragedy may subside

enough to allow a fair trial.  See ECF 1171 (denying Payne's request to change venue after finding prejudicial press coverage had subsided).  Right now, however, the wounds are too fresh.  Justice requires a continuance.

## CONCLUSION

Payne asks that the trial currently set for October 10, 2017 be set out to another date, no less than 60 days from then, and without prejudice to his seeking further relief when Payne and the other parties have been able to assess the impact of this tragedy.

DATED this 2nd day of October, 2017.

                Respectfully submitted,
                RENE L. VALLADARES
                Federal Public Defender

By: */s/ Brenda Weksler*
     BRENDA WEKSLER
     Assistant Federal Public Defender

By: */s/ Ryan Norwood*
     RYAN NORWOOD
     Assistant Federal Public Defender

**CERTIFICATE OF ELECTRONIC SERVICE**

The undersigned hereby certifies that she is an employee of the Federal Public Defender for the District of Nevada and is a person of such age and discretion as to be competent to serve papers.

That on October 2, 2017, she served an electronic copy of the above and foregoing **MOTION TO CONTINUE TRIAL** by electronic service (ECF) to all parties of record including the persons named below:

> STEVEN W. MYHRE
> Acting United States Attorney
> ERIN M. CREEGAN
> Assistant United States Attorney
> NADIA JANJUA AHMEN
> Assistant United States Attorney
> NICHOLAS DICKINSON
> Assistant United States Attorney
> 501 Las Vegas Blvd. South
> Suite 1100
> Las Vegas, NV 89101

*/s/ Cecilia Valencia, Legal Assistant*
Employee of the Federal Public Defender