RENE L. VALLADARES
Federal Public Defender
Nevada State Bar No. 11479
BRENDA WEKSLER
State Bar No. 8124
Assistant Federal Public Defender
RYAN NORWOOD
Assistant Federal Public Defender
411 E. Bonneville, Ste. 250
Las Vegas, Nevada 89101
(702) 388-6577/Phone
(702) 388-6261/Fax
Brenda_Weksler@fd.org

Attorneys for Ryan W. Payne

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:16-cr-046-GMN-PAL |
| Plaintiff, | **MOTION TO DISQUALIFY JURY PANEL AND SEND A NEW QUESTIONNAIRE** |
| v. | |
| RYAN W. PAYNE, | |
| Defendant. | |

**Certification**: This motion is timely filed.

Defendant Ryan W. Payne, by and through his counsel of record, Brenda Weksler and Ryan Norwood, Assistant Federal Public Defenders, hereby moves to disqualify jury panel and send a new questionnaire. This motion is based on the Points and Authorities attached hereto.

1 DATED this 10th day of October, 2017.

RENE L. VALLADARES
Federal Public Defender

By: */s/ Ryan Norwood*
RYAN NORWOOD
Assistant Federal Public Defender

By: */s/ Brenda Weksler*
BRENDA WEKSLER
Assistant Federal Public Defender

2

## MEMORANDUM OF POINTS AND AUTHORITIES

On December 13, 2016, this court determined that a jury questionnaire was appropriate in the instant case. *See* ECF 1107. Each party was requested to provide the court with a statement of the case, as well as potential questions for the jury questionnaire. *Id.* In turn, the government and each defendant complied.

On January 5, 2017, defendant Payne requested the court allow all parties to review and object, or to request additions, to the jury questionnaires that would be used in this case prior to distribution to the prospective jurors. *See* ECF 1241 p. 3. On January 23, 2017 this request was denied by the court. *See* ECF 1380. The Court's order indicated that there was no need for Counsel to review questions on the questionnaire since counsel had been provided with the types of question the court was considering asking. *Id.*

Payne also requested to see the questionnaires (without the answers provided by prospective jurors) to see which additional questions this Court had included in the questionnaire based on what was submitted by the different parties in response to this Courts' December 13, 2017 Order (ECF 1107). *See* ECF 1529 p. 4. The Order denied the request but addressed only the request for the completed jury questionnaires in relation to the supplement to the change of venue motion. *See* ECF 2605.

Payne again requested to view the questions that had been included in the jury questionnaire on March 6, 2017, asking this Court for the opportunity to participate and object to the additional questions that were provided by the parties in order to be able to make a record on any questions it may have found objectionable. *See* ECF 1673 p. 7-8. This Court denied that request explaining that the parties do not have a right to be involved in the jury questionnaire. *See* ECF 2604 p. 2.

On October 3, 2017, Payne received the completed questionnaires for the prospective jurors who will sit on the October 30, 2017 trial. As explained earlier, counsel was given no opportunity to view the questionnaire, object to the wording of individual questions and/or the

3

statement of the case. Counsel has no information concerning the instructions that came with the questionnaire, or if any option was given to individuals to have the questionnaire mailed to them and filled out in longhand if they did not have computer access at home, or if they were uncomfortable using a computer. Counsel is unaware whether the instructions indicate that the potential jurors should answer ALL questions, or if there are directions which indicate they can chose not to answer questions they are uncomfortable with.

Counsel has no idea if individuals simply did not respond to the summons based on a lack of computer familiarity or lack of access. The questionnaire as issued excludes individuals who do not have significant access to computers or the internet, as well as others who are not comfortable using computers.

It appears based on the responses to the questionnaires given to counsel on October 2, 2017 that all the questionnaires were completed via the internet. A large number of questionnaires are incomplete, in that significant questions involving possession of firearms, use of firearms are left blank, and answers to other questions are incomplete. After Payne raised this issue with the Court on October 6, 2017, the Court explained that this was due to a coding error. It is not clear how long the Court has known about the coding error, or how many other questions that have received no answers are due to a similar programming problem. The Court has entertained re-sending the questions that suffered the coding problem back to the prospective jurors, in addition to supplemental questions based on the events of October 1, 2017. That issue will be addressed separately in the event this Court orders to keep the current questionnaire and venire in place and denies this Motion.

I. **METHODOLOGY EMPLOYED AND POTENTIAL INABILITY TO PARTICIPATE WITHOUT ACCESS TO COMPUTER**

A jury selected from a fair cross-section of the defendant's community is "fundamental to the jury trial guaranteed by the Sixth Amendment." *Taylor v. Louisiana*, 419 U.S. 522, 530 (1975); *see Holland v. Illinois*, 493 U.S. 474 (1990); *Duren v. Missouri*, 439 U.S. 357 (1979).

A prima facie violation of the fair cross-section principle is set out in *Duren v. Missouri*, 439 U.S. at 364. In *Duren*, the Supreme Court adopted a three-prong test under which a defendant must show (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this under-representation is due to systematic exclusion of the group in the jury-selection process. Furthermore, a violation of the fair cross-section principle is per se reversible error and is not amenable to harmless error review. *See Vasquez v. Hillery*, 474 U.S. 254, 263-64 (1986).

Where a defendant challenges the fair cross-section principle, the relevant bodies for the court's review are venires from which juries are selected, rather than the specific group of jurors chosen for the defendant's trial. *See Taylor v. Louisiana*, 419 U.S. at 538 ("in holding that petit juries must be drawn from a source fairly representative of the community, we impose no requirement that petit juries actually chosen must mirror the community and reflect the various distinctive groups in the population"); *Holland v. Illinois*, 493 U.S. at 483 (while racial groups cannot be excluded from the venire from which a jury is selected, defendants are not entitled to a jury of any particular composition).

Counsel is unaware of the methodology employed in potential jurors receiving these questionnaires. It appears based on conversations with members of the community who received these questionnaires (fellow attorneys, family and friends) that a summons was received via United States Mail directing them to go to a specific website to fill out an initial questionnaire concerning availability. Counsel is unaware of whether there was an option listed on the initial summons to receive the questionnaire in hard copy, or to answer the questions via telephone. The Court's website suggests that a hard copy of the "qualification questionnaire" can be mailed but that the prospective jurors must mail it back *at his own expense*, which Payne contends is problematic in terms of getting a fair cross-section of the community. It is not clear what instructions were provided on the actual questionnaire as to the availability of a hard copy

or the need to pay for the postage of the return of these questionnaires. Without the option of being able to fill out a hard copy and pay for the postage associated with the return of those answers, individuals who do not have internet access either at work or home (low income demographic), as well as older individuals not comfortable with computer technology, were excluded from this jury pool. This unequal access to computer technology is widely acknowledged to be a problem and referred to the "the digital divide." In turn, this violates Payne's Sixth Amendment right to have a jury selected from a fair cross-section of the community, as those in the lower income demographic without access to computer may not have been a part of the pool which would ultimate constitute the jury venire.

Having no reliable information as to the number of prospective jurors who did not complete the web based questionnaire counsel requests the following information:

- Access to the questionnaire programming
- Data as to the number of prospective jurors who did not return a completed questionnaire
- Data as to the total number of summonses sent out and the number of responses received, including the number of those who requested a paper version of the qualification questionnaire
- Information as to the efforts made by the court/jury coordinator to reach non responsive prospective jurors
- Information as to the number of jurors who communicated that they were unable to complete the questionnaire in its current form
- The court's instructions to prospective jurors as to completing the questionnaire and admonishment not to discuss or confer with others in its completion
- Access to the court's admonishment that prospective jurors not research the case in any manner including use of the internet.

## II. STATEMENT OF THE FACTS LISTED IN THE QUESTIONNAIRE INCLUDES FACTS THE GOVERNMENT MUST PROVE

Counsel believes initially that the statement of facts in the questionnaire presumes facts that the government must present and prove at trial as facts that have already been proved. In contrast to the statement of facts that was provided in the questionnaire, the government's requested statements of the facts is more sterile than the one used. The government's statement of facts reads:

> The defendants are charged in a Superseding Criminal Indictment with multiple counts of violations of federal law arising from events *that are alleged to have occurred* at or near Bunkerville, Nevada, between approximately March 28 and April 12, 2014 and beyond. The Indictment *alleges* that during this time, federal law enforcement officers were enforcing court orders to impound cattle grazing unlawfully on federal public lands, which cattle belonged to an individual named Cliven Bundy ("Bundy"). The Indictment charges that the defendants conspired with, and/or aided and abetted, Bundy, and others, to threaten, and use, force and violence to interfere with the officers while they executed their duties to enforce the court orders. Specifically, the Indictment charges each of the defendants with the following offenses:
>
> Conspiracy to Commit an Offense Against the United States, in violation of Title 18, United States Code, Section 371
> Conspiracy to Impede and Injure a Federal Officer, in violation of Title 18, United States Code, Section 372
> Assault on a Federal Officer with a Deadly Weapon, in violation of Title 18, United States Code, Section 111(a) and (b)
> Threatening a Federal Law Enforcement Officer, in violation of Title 18, United States Code, Section 115(a)(1)(B)
> Interference with Interstate Commerce by Extortion, in violation of Title 18, United States Code, Section 1951
> Interstate Travel in Aid of Extortion, in violation of Title 18, United States Code, Section 1952
> Use and Carry of a Firearm in Relation to a Crime of Violence, in violation of Title 18, United States Code, Section 924(c)
> Obstruction of the Due Administration of Justice, in violation of the Title 18, United States Code, Section 1503
> Aiding and Abetting all of the above, in violation of Title 18 United States Code, Section 2
>
> The defendants have pleaded not guilty to all charges alleged in the Indictment. The case is now set to proceed to trial.

1 *See* ECF 1151 (emphasis added).

2     This court in summarizing the government's statement of facts for use in its
3 questionnaire stated:

> The defendants are charged in a Superseding Criminal Indictment ("Indictment") with multiple counts of violations of federal law arising from events that are alleged to have occurred at or near Bunkerville, Nevada, between approximately March 28 and April 12, 2014, and beyond. *During this time, federal law enforcement officers were enforcing court orders to impound cattle belonging to defendant Cliven Bundy that were continuing to graze unlawfully on federal public land despite prior court orders to pay the grazing fees or remove the cattle.* The indictment alleges the defendants interfered with and prevented federal officers from executing their duties to enforce the court-ordered impoundment operation.
>
> Specifically, the Indictment charges each of the defendants with the following offenses:
> Conspiracy to Commit an Offense Against the United States, in violation of Title 18, United States Code, Section 371
> Conspiracy to Impede and Injure a Federal Officer, in violation of Title 18, United States Code, Section 372
> Assault on a Federal Officer with a Deadly Weapon, in violation of Title 18, United States Code, Section 111(a) and (b)
> Threatening a Federal Law Enforcement Officer, in violation of Title 18, United States Code, Section 115(a)(1)(B)
> Interference with Interstate Commerce by Extortion, in violation of Title 18, United States Code, Section 1951
> Interstate Travel in Aid of Extortion, in violation of Title 18, United States Code, Section 1952
> Use and Carry of a Firearm in Relation to a Crime of Violence, in violation of Title 18, United States Code, Section 924(c)
> Obstruction of the Due Administration of Justice, in violation of Title 18, United States Code, Section 1503
> Aiding and Abetting all of the above, in violation of Title 18, United States Code, Section 2
>
> The defendants have pleaded not guilty to all charges alleged.

*See* Exhibit A *(*sample of questionnaire responses by prospective jurors submitted under seal).

    This court failed to use the word "alleged" when describing the conduct involving "the unlawful grazing on federal public land." While counsel does not believe the government's statement of the case is appropriate, and offered its own statement of the case, the government

8

was careful to speak of what the indictment alleges, as opposed to stating what needs to be proven as "facts".

### III. ISSUES WITH THE PROGRAMMING OF THE QUESTIONNAIRE/ REQUEST TO SEE DIRECTIONS GIVEN TO PROSPECTIVE JURORS

Based on the questionnaires provided, it appears that a drop down menu might have been provided providing answers to different questions. Counsel is unable to assess the import of the answers to certain questions if he is unfamiliar with the choices available for each of the responses. Counsel is requesting information concerning what instructions the prospective jurors were provided when they made no response or left a response blank.

Based on the large number of incomplete questionnaires given to counsel it is important that counsel be given access to the directions given to prospective jurors. It is unclear whether the directions indicate that prospective jurors can choose not to answer questions they are uncomfortable answering or whether certain jurors have just chose not to answer certain questions. Providing the directions given to the prospective jurors will allow counsel to assess whether the prospective jurors have trouble following directions to answer the questions, or whether they were simply following directions informing them they could refuse to answer questions which made them uncomfortable.

### IV. DUPLICITOUS QUESTIONS

The Jury questionnaire provides duplicitous questions. These duplicitous questions deal primarily with bias in favor of the government. Question 2 on page 20 is almost identical to question 2 on page 27. Questions 3 and 4 on page 20 are similar to questions 4 and 4 A on page 27. Question 18 on page 24 is similar to question 8 on page 28. There are far too many duplicitous questions to specifically list.

While most of the questions proposed by Payne do not appear on the questionnaire, this court asked a significant number of questions posed by the government concerning potential

9

bias against government agencies over and over again. Payne objects to the absence of his proposed questions.

## V. NECESSITY FOR NEW QUESTIONNAIRE

Even if this court finds that the questionnaire as designed is not flawed, a new questionnaire is necessary because of the events of October 1, 2017 which resulted in 58 deaths and approximately 500 injuries in the largest mass casualty shooting ever had in this country.

Many individuals have spoken publically concerning the fact that their views concerning firearms have changed in the last few days. Similarly many individuals have indicated that their views concerning law enforcement response to "highly charged" incidents have also changed. It is likely that the questionnaires filed out in the last few weeks do not adequately reflect the views of the prospective jurors now.

In addition, with 58 deaths and nearly 500 people injured many prospective jurors may have been touched directly by these events. Some may have attended the music festival, had friends and family in attendance. We note that the present jury pool contains a jurors who themselves or their spouses work in medicine, public services or along the strip. Counsel believes a new questionnaire is necessary. Counsel would suggest that the jurors be summoned a ten days prior to trial and fill out the questionnaires by hand in the jury assembly room. Prior to allowing the jurors to leave, counsel would suggest that a check is done by court staff to make sure every question on the questionnaire is answered. This will not only allow for a better cross section of the community, it will ensure that the questionnaires are completed in full and facilitate a much quicker jury selection process.

Counsel is aware of the option this Court provided on October 6, 2017, which would include to re-sending the questions dealing with firearms and questions regarding the events of October 1, 2017 back to the prospective jurors. For the reasons stated above, counsel does not believe that method cures the existing problems with the questionnaire. As mentioned above,

counsel will address that option separately in the event this court denied this Motion and decided to proceed with the same panel and the same questionnaire.

## CONCLUSION

It is the belief of the defendant that the jury questionnaire designed by the court, which can be filled out only via internet does not allow for a proper cross section of the community. The statement of the case listed in the questionnaire fails to address the information as mere allegations in an indictment. The lack of instructions concerning the filing out of the indictment fails to allow counsel to properly ascertain the reasons why significant portions of questionnaires are left unanswered. The questions asked of the panel have a significant government bias. A new questionnaire, filled out in the courthouse, that contains a more neutral statement of the case, and questions designed to expose bias both for the government and for the defendant is necessary. The questionnaire as it currently exists has tainted the jury pool. A new jury pool and questionnaire is necessary.

DATED this 10th day of October, 2017

        Respectfully submitted,
        RENE L. VALLADARES
        Federal Public Defender

By: */s/ Ryan Norwood*
    RYAN NORWOOD
    Assistant Federal Public Defender

By: */s/ Brenda Weksler*
    BRENDA WEKSLER
    Assistant Federal Public Defender

**CERTIFICATE OF ELECTRONIC SERVICE**

The undersigned hereby certifies that she is an employee of the Federal Public Defender for the District of Nevada and is a person of such age and discretion as to be competent to serve papers.

That on October 10, 2017, she served an electronic copy of the above and foregoing **MOTION TO DISQUALIFY JURY PANEL AND SEND A NEW QUESTIONNAIRE** by electronic service (ECF) to the person named below:

> STEVEN W. MYHRE
> Acting United States Attorney
> ERIN M. CREEGAN
> Assistant United States Attorney
> NADIA JANJUA AHMEN
> Assistant United States Attorney
> DAN SCHIESS
> Assistant United States Attorney
> 501 Las Vegas Blvd. South
> Suite 1100
> Las Vegas, NV 89101

*/s/ Lauren Conklin*
Employee of the Federal Public Defender