RENE L. VALLADARES
Federal Public Defender
Nevada State Bar No. 11479
BRENDA WEKSLER
State Bar No. 8124
Assistant Federal Public Defender
RYAN NORWOOD
Assistant Federal Public Defender
411 E. Bonneville, Ste. 250
Las Vegas, Nevada 89101
(702) 388-6577/Phone
(702) 388-6261/Fax
Brenda_Weksler@fd.org
Ryan_Norwood@fd.org

Attorneys for Ryan W. Payne

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:16-cr-00046-GMN-PAL-4 |
| Plaintiff, | **DEFENDANT RYAN PAYNE'S REPLY TO GOVERNMENT'S RESPONSE TO MOTION TO DISMISS, WITH PREJUDICE, DUE TO GOVERNMENT'S COLLECTION OF PRIVILEGED ATTORNEY-CLIENT PHONE CALLS** |
| v. | |
| CLIVEN BUNDY, ET AL. | |
| Defendants. | |
| | (Expedited Treatment Requested) |

**Certification:** This Reply is timely filed.

Defendant Ryan Payne, through his counsel of record, Assistant Federal Public Defenders Brenda Weksler and Ryan Norwood, has moved this Court to dismiss the instant case, with prejudice. This Reply to the Government's Response is based on the Points and Authorities set forth below.

1     DATED this 8th day of December, 2017.

                                                      RENE L. VALLADARES
                                                      Federal Public Defender

                           By:  */s/ Brenda Weksler*
                                                        BRENDA WEKSLER
                                                      Assistant Federal Public Defender
                                                      Attorney for Ryan Payne

                           By:  */s/ Ryan Norwood*
                                                       RYAN NORWOOD
                                                     Assistant Federal Public Defender
                                                     Attorney for Ryan Payne

**MEMORANDUM OF POINTS OF AUTHORITIES**

**I.  INTRODUCTION**

The government's Response confirms, rather than alleviates, the concerns raised in Payne's Motion to Dismiss. Based on the representations in that pleading, the prosecution will not or cannot prevent privileged attorney-client calls involving Payne and the other defendants in this case from falling into their hands. The case should be dismissed.

**II.  POINTS AND AUTHORTIES**

**A.  The government cannot prevent the privileged communications of Payne and the other defendants in this case from being obtained by the prosecution and distributed to other parties**

In October of 2016, Mr. Payne filed a motion informing this Court of his good faith belief that the jail may have been recording his privileged attorney-client conversations with undersigned counsel, and sought remedies to prevent those recordings from falling into the hands of the prosecution. ECF No. 727. The Court denied this motion based on the government's "affirmative[] represent[ation] that **it has no recordings of conversations between Payne and his counsel, or between Payne's co-defendants and their counsel**." ECF No. 997 at 7 (emphasis added).

On September 11, 2017, however, the government disclosed to Mr. Payne phone calls made from jail by defendant Blaine Cooper, who pled guilty and is cooperating with the government. A number of these recordings capture conversations between Mr. Cooper and the attorney representing him in the related federal criminal case in Oregon, where they discuss matters pertaining to this case. *See* ECF 2893. Exs. F & G (sealed exhibits to supplement, including a summary of the calls identified by Payne and the calls themselves).

In response to Payne's initial communications about these calls, the government represented that **"[w]e were advised by the FBI taint team reviewing the calls that although the defendant may be discussing his trial strategy on phone calls none of the calls were between the defendant and his lawyer but rather third parties**." Ex. B, ECF 2892. This

representation wasn't correct, either. In the Response, the government acknowledges the "FBI taint team" was indeed aware that the calls received from Blaine Cooper included privileged calls with his attorney. ECF 2948, pp. 2-3, 8. The government acknowledges that 11 of the disclosed calls are subject to the attorney-client privilege. One of these calls was from the Henderson facility, the other were from the Las Vegas jail.

Yet the taint team passed along "[a]ll of the calls" to the prosecution, who subsequently disclosed all of the calls to the co-defendants in discovery. ECF 2948, pg. 3. The government did not obtain the permission of Cooper or his lawyer. In a recent newspaper interview, Cooper's lawyer [Krista Shipsey] stated, "I didn't know, nor did Blaine," . . . "It's extremely concerning. We were assured those conversations would be confidential."[1]

The government does not claim that the taint team committed any error in passing along all of the calls. To the contrary, the government insists it did everything in his power to safeguard the attorney-client privilege. ECF 2948, pg. 7. The government insists its procedures are OK because (1) the taint team identified the privileged calls and declined to summarize their contents, and (2) the prosecutors promise they won't listen to them.

These representations do nothing to alleviate the violations of the attorney-client privilege set forth in Payne's motion. According to the Response, the government "cannot direct the jail not to record [privileged] calls, or force the jail to review them and weed such calls out before providing them to the government." ECF 2948, pg. 7. The "taint team" is thus the *only* mechanism to prevent privileged attorney-client calls from falling into the hands of the prosecutors, should they elect to request a defendant's jail phone calls. And according to the government's Response, the taint team *doesn't* screen out privileged calls, but rather passes them along to the prosecution with a notation on a log that the calls are "minimized." The defendants, as such, have nothing to protect them from a violation of the attorney-client

---

[1] Maxine Bernstein, *Prosecutors shared recorded attorney-client jail phone calls with defense in NV Bunkerville case*, THE OREGONIAN, December 5, 2017, available at http://www.oregonlive.com/oregon-standoff/2017/12/prosecutors_shared_recorded_at.html

4

privilege other than the prosecution's say-so that they will not listen to the privileged calls that will fall into their possession. And even if the prosecution did not listen to his calls, Payne cannot stop the prosecution from distributing those calls to other, potentially adverse parties, as they did with Cooper's calls.

The government insists Payne has nothing to worry about because "the prosecution team has obtained none of defendant Payne's *privileged* attorney-client jail calls." ECF 2948, pg. 8 (emphasis added).[2] Neither Payne nor the Court can or should accept this representation. For one thing, the government has already twice represented to the Court that they were not in the possession of other co-defendants' privileged calls, when they were in fact in the possession of (at least) Blaine Cooper's privileged calls. Notably, the government refuses to clarify *when* it came into the possession of these calls, although they obviously had them in their possession on November 13, 2017, when the prosecution nonetheless incorrectly claimed that "none of the calls" reviewed by the taint team were privileged. Ex. B to ECF 2892.

The government, moreover, does not deny that it has requested Payne's recorded jail phone calls (or those of other co-defendants), as it commonly does with respect to incarcerated defendants who are going to trial. As noted above, the government claims to be powerless to stop the jail from recording Payne's privileged calls, or to request the jails to "weed" them out when requesting calls. And it is clear from the calls received from Blaine Cooper that the jails, including the Henderson facility at which Payne was incarcerated for over a month until the Court released him on house arrest release last week, do in fact record and pass along privileged calls. Pursuant to the procedure described by the government with respect to Cooper's calls, the "taint team" reviewing such calls might note such calls are privileged, but will still pass them along to the government. Unless the government were prevented from obtaining his calls

---

[2] The government's Response only appears to deny that the prosecution does not possess *Payne*'s privileged communications, leaving open the possibility they possess other defendants' privileged communications, including potentially the other three defendants in this trial.

5

– as Payne sought to do in his original October 2016 Motion -- Payne has nothing to protect him from an inevitable violation of his attorney-client privilege.

Even if the taint team's practice of merely identifying, rather than screening out, privileged communications were somehow an adequate safeguard against a Sixth Amendment violation, the information provided by the government shows the taint team wasn't doing that job adequately. Payne had located, reviewed, and specifically identified for the government 12 calls made from the Las Vegas jail to Cooper's Oregon attorney at her office phone number. Ex. B to ECF 2892; ECF 2893, Exs. F & G. In its Response, the government provided under seal several spreadsheets (without providing any authentication, authorship, or date date) that purport to be from the taint team that screened and summarized Cooper's calls. These sheets, however, only list *nine* of these identified calls. ECF 2948, pg. 8.[3] The spreadsheets are missing three of the jail calls from Cooper to his attorney identified by the Payne, which nonetheless were passed along to the prosecution and then provided in discovery without anything marking them as privileged communications.

The information provided by the government also raises issues about the procedures and purported independence of the "taint team." In at least one instance, the team "minimized" a call made to a party who was not Cooper's lawyer, but in which the conversation concerned his legal representation. Ex. C, #24. The government's response lists this call as a "privileged" communication. ECF 2948, pg. 8. *See also United States v. Richey*, 632 F.3d 559, 566 (9th

---

[3] The twelve calls from the spreadsheets listed in the Response (ECF 2948, pg. 8) are not the same 12 calls identified by Payne. They include nine of the Las Vegas jail calls to the lawyer, but also include (a) a privileged call made from the Henderson facility to Cooper's lawyer (Ex. B, #89); (b) a call made to another party that discusses a conversation with the lawyer, which the taint team marked as "minimized," and which the government acknowledges to be privileged, (Ex. C, #24); and (c) a call made to a third party where Cooper discusses his conversations with his attorney, which the spreadsheet lists as a call to the attorney, but which is summarized and which the government maintains is not a privileged call. (Ex. A, #95).

The three calls identified by the defense that are not listed in the spreadsheet are further described in a sealed supplement to this Motion.

Cir. 2011) ("The attorney client privilege may extend to communications with third parties who have been engaged to assist the attorney in providing legal advice."). Cooper's calls, however, include numerous other third-party communications where he discusses his cases in Oregon and Nevada, his communications with his lawyer, and his legal strategies. *See* Exs. A, B, and C to ECF 2948 (summarizing these calls). The taint team did not minimize these conversations, and indeed summarized many of them in detail for the benefit of the prosecution. The Response says nothing about how the taint team draws these distinctions. In particular, the government does not disclose whether the "FBI taint team" includes a lawyer who is competent to resolve the legal questions that third-party communications may raise regarding the attorney-client privilege. Nor it is clear why a taint team that is "separate and apart" from the prosecution needs to provide summaries of Cooper's non-privileged calls for the benefit of the prosecution.

**B.    Dismissal is necessary to remedy the Sixth Amendment Violations alleged by Payne and confirmed by the government's response.**

"The attorney-client privilege is not only the oldest privilege known to the common law, but the attorney-client privilege is also, perhaps, the most sacred of all legally recognized privileges, and its preservation is essential to the just and orderly operation of our legal system." *In re Grand Jury Proceedings Grand Jury No. 97-11-8*, 162 F.3d 554, 556 (9th Cir. 1998). The privilege is particularly important for criminal defendants: "In American criminal law, the right to privately confer with counsel is nearly sacrosanct." *Nordstrom v. Ryan*, 762 F.3d 903 at 910 (9th Cir. 2014). Indeed, it "is well established that an accused does not enjoy the effective aid of counsel if he is denied the right of private consultation with him." *Id.* (internal quotation marks omitted); *see also Bittaker v. Woodford*, 331 F.3d 715, 723 n.7 (9th Cir. 2003) (en banc) ("Utmost candor between an attorney and client is essential to effective assistance of counsel." (brackets and internal quotation marks omitted)).

A defendant cannot enjoy his right to private consultation with his attorney when he knows his privileged communications will end up on his prosecutor's desk. That's exactly what

7

is happening here.  According to their own representations in this case, the government cannot (or will not) prevent the jails from recording the defendants' calls with their attorneys.  The government cannot (or will not) require the jails to screen or edit those calls before sending them to the government.  The government's taint team cannot (or will not) identify all of the privileged calls it receives.  But even if the taint team could identify such calls, it does no good because they will send them all along to the prosecution anyway.

The prosecution's possession of a defendants' confidential communications violates the Sixth Amendment, regardless of whether the prosecutors claim they will not listen to them.  Defendants "have to be able to talk to their lawyers candidly *without fear that what they say to their own lawyers will be transmitted to the government*."  *United States v. Chen*, 99 F.3d 1495, 1499 (9th Cir. 1996) (emphasis added).  In this case, the government has already proven itself to be an untrustworthy guardian of Cooper's confidential communications.  The government not only possessed these communications, but sent them along to other co-defendants who are in an adverse position to Cooper.  If this is how the government treats the privileged communications of a defendant who is *cooperating* with them, how can Payne expect the government to treat his privileged communications any better?

The government's naked assertion that it does not have Payne's privileged phone calls in its possession is of no value for several reasons.  The government possessed Cooper's privileged communications despite two prior representations that it did not have attorney-client calls.  And despite Payne's request in his Motion, the government refuses to state whether it has sought or possesses Payne's phone calls, or the phone calls of other co-defendants.  Payne has every reason to believe that the government has requested his calls.  As explained above, the government's lack of safeguards ensures that requesting a defendants' jail phone calls will inevitably cause the prosecution to receive his *privileged* jail phone calls.  In any event, Payne doesn't know what the government considers to be "privileged" communications.  The discrepancies in the "taint team" spreadsheets, noted above, show that the taint team is either

unable to correctly identify privileged calls, and/or that it applies an unduly narrow standard to identify such calls.

The government's actions have already substantially prejudiced the defense. The flagrant violation of Cooper's Sixth Amendment rights have chilled the free exchange of communications between Payne and his counsel. *See Nordstrom*, 782 F.3d at 910 ("It takes no stretch of imagination to see how an inmate would be reluctant to confide in his lawyer about the facts of the crime, perhaps other crimes, possible plea bargains, and the intimate details of his own life and his family members' lives, if he knows that a guard is going to be privy to them, too."); *Weatherford v. Bursey*, 429 U.S. 545, 554 n.4 (1977) ("One threat to the effective assistance of counsel posed by government interception of attorney-client communications lies in the inhibition of free exchanges between defendant and counsel because of the fear of being overheard.").

The cases the government relies upon to show lack of prejudice are inapposite. In most of the case, the inference with the privilege was non-prejudicial because privileged communications did *not* end up in the prosecution's possession. *See United States v. Hernandez,* 937 F.2d 1490, 1493 (9th Cir. 1991) (noting co-defendant turned cooperator did not disclose to government information learned at joint defense meeting); *United States v. Morrison*, 449 U.S. 361 (1981) (concerning government agents who sought to interfere with attorney-client relationship, but who were not alleged to have obtained any privileged communications); *Weathersby v. Bursey*, 429 U.S. 545, 548 (1977) (undercover agent attended privileged meetings, but did not "discuss" or "pass on" details to his superiors or prosecuting attorney). *United States v. Green*, 962 F.2d 938 (9th Cir. 1992), doesn't involve a privileged communication at all, but a rather a recording of a conversation between a law clerk working for the defendant's attorney and a third party. *Id.* at 941. None of these cases are remotely comparable to this case, where at the very least: (1) the government has intercepted numerous privileged communications between a co-defendant and his attorney where they discuss intimate details about his cases; (2) those communications have been sent to the prosecutors,

and (3) the communications were then sent along to co-defendants who could and would seek to use them against Cooper should he be called to testify against them. *See* Sealed Supplement (discussing exculpatory information in the privileged calls).

The government's flagrant misconduct merits dismissal of the indictment as a Sixth Amendment violation, as well as due process violation and an exercise of the Court's supervisory powers under *United States v. Chapman*, 524 F.3d 1073, 1084 (9th Cir. 2008), as set forth in Payne's original Motion. But even if the Court does not agree that existing record justifies dismissal, it must conduct further inquiry to determine if the government has violated the Sixth Amendment by collecting the privileged calls of other defendants in this case.

First, the Court should require the government to affirmatively state and demonstrate whether or not it has sought and obtained the jail phone calls of Payne and the other defendants in this case.

If the government can demonstrate that it has not already sought jail calls, the government should be barred from obtaining them. As explained above, the government lacks adequate safeguards to prevent privileged jail phone calls from arriving in the prosecution's office if phone calls are requested. As such, the only way to prevent a Sixth Amendment violation is to prevent the prosecution from obtaining any calls in the first place.

If the government has obtained any calls from Payne or other co-defendants, those calls must be reviewed in camera to determine if they include privileged calls. The government's naked representations that it does not possess Payne's privileged phone calls cannot be taken on faith in light of their prior representations about Cooper's calls, and in light of the demonstrable lack of safeguards described *supra*. Because any privileged calls may concern this ongoing trial, Payne requests that such in camera review be conducted by a different judge.

*If in camera* review does reveal the prosecution possesses other privileged attorney-client calls (in spite of their numerous prior representations), the indictment should certainly be dismissed.

### III. CONCLUSION

For the reasons described above and in his Motion, Mr. Payne asks the indictment to be dismissed, or alternately for further inquiry as described *supra* and at ECF 2842, pp. 10-11.

DATED this 8th day of December, 2017.

        Respectfully submitted,
        RENE L. VALLADARES
        Federal Public Defender

By: */s/ Brenda Weksler*
        BRENDA WEKSLER
        Assistant Federal Public Defender
        Attorney for Ryan Payne

By: */s/ Ryan Norwood*
        RYAN NORWOOD
        Assistant Federal Public Defender
        Attorney for Ryan Payne

**CERTIFICATE OF ELECTRONIC SERVICE**

The undersigned hereby certifies that she is an employee of the Federal Public Defender for the District of Nevada and is a person of such age and discretion as to be competent to serve papers.

That on December 8, 2017, she served an electronic copy of the above and foregoing **DEFENDANT RYAN PAYNE'S REPLY TO GOVERNMENT'S RESPONSE TO MOTION TO DISMISS, WITH PREJUDICE, DUE TO GOVERNMENT'S COLLECTION OF PRIVILEGED ATTORNEY-CLIENT PHONE CALLS** (**Expedited Treatment Requested**) by electronic service (ECF) to the person named below:

STEVEN W. MYHRE
Acting United States Attorney
NADIA JANJUA AHMEN
Assistant United States Attorney
DAN SCHIESS
Assistant United States Attorney
501 Las Vegas Blvd. South
Suite 1100
Las Vegas, NV 89101

*/s/ Lauren Conklin*
Employee of the Federal Public Defender